**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **DOUGLAS L. BURTON** | § | |
| | § | |
| **V.** | § | **A-09-CA-298-LY** |
| | § | |
| **TEXAS PARKS AND WILDLIFE** | § | |
| **DEPARTMENT, ET AL.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are: Defendants' Motion for Summary Judgment filed August 6, 2010 (Clerk's Doc. No. 38); Plaintiff's Response to Defendants' Motion for Summary Judgment filed August 25, 2010 (Clerk's Doc. No. 39); and Defendants' Reply to Plaintiff's Response to Motion for Summary Judgment filed September 7, 2010.  The District Court referred the above motions to the undersigned Magistrate Judge for a recommendation pursuant to 28 U.S.C. §636(b) and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

## I.  BACKGROUND

Plaintiff Douglass Burton, proceeding pro se,  filed the instant discrimination lawsuit against the Texas Parks and Wildlife Department ("TPWD") and TPWD's executive director and director of human services in their official capacity (collectively referred to as "TPWD") after TPWD failed to interview or hire him for any of the seven positions he applied for between April 10, 2008, and September 10, 2008.[1] Burton alleges that he was denied each of these positions due to his age, in

_____

[1]While Burton maintains that he applied for seven positions, he can only produce evidence of six applications, and Defendant was unable to identify any other position he had applied for.  The

violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), codified at 29 U.S.C. § 621 *et seq*. Specifically, Burton claims that the TPWD's requirement that applicants submit a PWD-1039-H0800 form with their job application allows TPWD to discriminate on the basis of age because this form includes a blank for the applicant's date of birth. (The form is a consent form for a criminal background check.) Burton further alleges that TPWD's employees in charge of hiring for these positions interviewed or hired individuals that were less qualified either by education or experience than Burton at the time of the hiring decision. This Court granted Burton *in forma pauperis* status but dismissed Burton's monetary damages claim as barred by the Eleventh Amendment. *See* Order on Report and Recommendation (Clerk's Doc. No. 30). Burton's suit for prospective injunctive relief,[2] however, was permitted to continue and shall now be addressed.

TPWD moves for summary judgment on two grounds: (1) Burton failed to establish a prima facie case of discrimination under the ADEA because he did not demonstrate that he met the qualifications for the positions sought; and (2) even if Burton established a prima facie case, he cannot rebut TPWD's legitimate and non-discriminatory reason not to interview or hire him.

## II.  Analysis

### A.    Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

---

Court will therefore limit its analysis to the six positions for which there is evidence of an application.

[2]Under the *Ex parte Young* doctrine, a private party may sue individual state officers in federal court to obtain prospective injunctive relief from an ongoing violation of federal law. *See Ex parte Young*, 209 U.S. 123 (1908); *AT&T v. BellSouth Telecommunications Inc.*, 238 F.3d 636, 647 (5th Cir. 2001).

that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary-judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary-judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary-judgment evidence. *Id.*. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly

3

preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

**B.    TPWD Contends that it Could Not Have Considered Burton's Age**

TPWD first argues that it could not possibly have discriminated against Burton based on his age because it did not know his age when it rejected his applications. TPWD produced evidence that the document containing the applicants' age, PWD-1039-H0800, was separated from the applications before the applicant screeners read the applications. Affidavit of Jim Lopp ¶ 5. But, as Burton mentioned in his deposition, TPWD could still estimate his age based on the year he graduated from high school and from the dates of his college enrollment, all of which was included in his application. Deposition of Douglas Burton at 65:6–15. Thus, while TPWD has a process in place to separate the date of birth from the application, there was still information before the screeners that would have enabled them to know generally what Burton's age was. The evidence therefore does not establish that consideration of Burton's age was impossible.

**C.    Has Burton Established a Prima Facie ADEA Claim?**

The ADEA makes it unlawful "for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1) (2006). ADEA discrimination claims are subject to the burden-shifting framework promulgated in *McDonnell Douglas Co. v. Green*, 411 U.S. 792 (1973). *See LaPierre v. Benson*

4

*Nissan, Inc.*, 86 F.3d 444, 449 n.5 (5th Cir. 1996) (applying *McDonnell* to the ADEA).  Under this analysis, "the plaintiff must [first] establish a prima facie case of discrimination."  *Reeves*, 530 U.S. at 142.  This requires Burton to satisfy four elements: (1) he was over age forty when the discrimination took place; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated younger employees. *Evans v. City of Houston*, 246 F.3d 344, 350 (5th Cir. 2001).  Once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to demonstrate a legitimate, non-discriminatory reason for its decision.  *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007).  If the employer articulates a legitimate, non-discriminatory reason, then the burden shifts back to the plaintiff to rebut the employer's explanation by producing evidence that the reasons provided were not its true reasons, but were a  pretext for discrimination.  *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010).

For each of the six positions at issue, the summary judgment record establishes that Burton (1) was over forty years old when he applied for the positions; (2) he was not interviewed or hired for any of the positions, and (3) TPWD hired someone under forty years of age for each of the positions.  Whether Burton has established a prima facie case of age discrimination on these positions therefore revolves around whether there is summary judgment evidence that Burton was qualified for the positions.

TPWD argues that Burton has failed to prove that he was qualified for the positions because he was receiving workers' compensation at the time he applied for these positions and thus was by definition unable to work.  The summary judgment evidence, however, indicates that Burton had been released to perform light duty work.  The Court has reviewed the summary judgment record,

and cannot find any evidence regarding whether the positions at issue required a higher level of activity than Burton could perform.  The Court therefore may not assume that the positions were something other than light duty jobs that Burton was able to perform.

TPWD also argues that Burton's application did not demonstrate he possessed the necessary minimum qualifications required for each position.  But this argument focuses more on the lack of depth in Burton's application (claiming that TPWD was forced to "read between the lines" to determine Burton's qualifications) than on proof that he did not possess the minimum qualifications for each job.[3]  While the Court agrees that the application materials were not detailed, it cannot conclude from this that, as a matter of law, Burton was not qualified for the positions.  Taking the evidence in the light most favorable to Burton, the Court finds that Burton met the minimum requirements for each of the positions he applied for.  Accordingly, he has established a prima facie case of discrimination.

**D.   Did TPWD Produce Non-Discriminatory Reasons for not Interviewing Burton?**

TPWD contends that there were legitimate, non-discriminatory reasons for its decision not to interview Burton. TPWD avers that it screened applications by utilizing a system that ranked applicants based on their knowledge, skills, and abilities (KSAs) required for each position.  *See* Business Records Declaration of Jim Lopp (providing a spreadsheet with the applicants KSA scores). TPWD then ranked the applicants based on their KSA score and interviewed the highest scoring

---

[3]For example, Burton listed pro shop manager on his application for a "clerk two" position, which required applicants to "handle cash transactions accurately and account for revenue collected." Burton argues that TPWD should have realized that his experience as a pro shop manager included this skill set.  Deposition of Douglas Burton at 86:7–88:22.  At the summary judgment stage, the Court must take Burton's evidence in its most favorable light.  This evidence is sufficient for Burton to establish that he was qualified for the position.

applicants.  *See* Rhoda Anderson Memorandum (recommending an applicant for a position and detailing the process).  TPWD argues that Burton's applications lacked detailed descriptions, which kept the screeners from awarding Burton a higher score.  Defendants' Motion for Summary Judgment at 16–17.  Using this objective scoring matrix, TPWD ranked Burton lower than the applicants that it interviewed.  The applicants interviewed had more detailed job descriptions and had recently worked in similar positions.  *Compare* Burton's Application for the Clerk II position (summarizing his duties as pro shop manager as "Run daily pro shop operation and supervised cart staff and kitchen staff at Plum Creek Golf Club) *with* James Price's Application (listing his duties as Co-Owner and Operator of a bakery as):

- • Handled all aspects of a successful business; including customer service, sales, purchasing, accounting, and employee hiring and training

- • Recruited and managed over 25 employees; including assistant managers, customer service, and food production staff working both full and part-time

- • Oversaw daily operations of food production, inventory control, and order fulfillment.)

TPWD has articulated legitimate, non-discriminatory reasons for its actions; therefore, to survive summary judgment Burton must rebut TPWD's reasons and demonstrate that the provided reasons were actually a pretext for discrimination.

Burton's response to the summary judgment motion is three pages long, and contains no evidence.  In the response, Burton simply argues that TPWD's screening process is poor practice.  Throughout his deposition, he argues that TPWD should interview all applicants and that the screeners should know from his job descriptions what experiences he has had.  *See, e.g.*, Deposition of Douglas Burton at 90:12–92:12.  But Burton does not argue that TPWD's process discriminates

7

based on an applicant's age. *Id.* at 97:16–24. Since TPWD ranked and then interviewed applicants using an objective, non-discriminatory process, Burton was obligated to come forward with evidence demonstrating that TPWD's proffered reasons for its actions were not the real reasons, but rather were pretexts for age discrimination. Instead, Burton simply restated the arguments contained in his Complaint that formed his prima facie case. Accordingly, TPWD is entitled to summary judgment.[4]

**E.      Inclusion of the Criminal Background Form**

It is not clear that Burton has made an independent claim for injunctive relief seeking to prohibit TPWD from requiring applicants for employment to complete the criminal background form at the time of their application. Out of an abundance of caution, the Court will address this issue, in the event Burton's suit is construed as including that claim. TPWD produced uncontroverted evidence that the form is separated from the application before any of the decision-makers review the applications, and the date of birth information is not made known to screeners. Affidavit of Jim Lopp ¶ 5. Only after the selection panel interviews and recommends an applicant for a position does the Human Resources Division run the background check. *Id.* at ¶ 6. Burton offers no evidence to contradict this, or to contest that this in fact is what happened with his applications. Accordingly, summary judgment is appropriate on this claim, assuming it is raised by Burton's complaint.

**IV.  RECOMMENDATION**

The undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Defendants' Motion for Summary Judgment and **DENY** Burton's request for an injunction.

---

[4]For one of the six positions, Burton has also admitted that the person TPWD hired was more qualified than him. Deposition of Douglas Burton at 101:1–4 (referring to the Fish & Wildlife Technician position at A.E. Wood State Fish Hatchery). Thus, as to this position, this is an independent basis on which summary judgment could be granted.

## V.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C) (2006) ; *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 15th day of September, 2010.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE